IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RICKY LYNN MARSH, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:08-CV-193-J |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

### REPORT AND RECOMMENDATION
### TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner RICKY LYNN MARSH has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 223rd Judicial District Court of Gray County, Texas, for the offenses of possession of a controlled substance with intent to deliver and possession of chemicals with the intent to manufacture a controlled substance. For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

### I.
### PROCEDURAL HISTORY

On June 8, 2006, a jury found petitioner guilty of possession of a controlled substance and of possession of certain chemicals with the intent to manufacture a controlled substance. Petitioner was then sentenced to forty-year and twenty-year terms of incarceration, respectively. Marsh's

conviction was affirmed on direct appeal, and his petition for discretionary review was refused by the Texas Court of Criminal Appeals. *See Marsh v. State*, Nos. 07-06-263-CR & 07-06-264-CR, 2007 WL 1135381 (Tex. App.—Amarillo, Apr. 17, 2007, pet. ref'd). Marsh's petition for a writ of certiorari was also denied. *See Marsh v. Texas*, 128 S. Ct. 1890 (Apr. 14, 2008). Petitioner did not apply at the state level for habeas corpus relief, but filed his federal petition for habeas corpus relief on October 28, 2008.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to contend he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. His conviction was obtained by the use of evidence gained from an unconstitutional search and seizure.

2. His conviction was obtained by the use of a statutory standard of evidence of less than beyond all reasonable doubt.

3. The intermediate state appellate court denied him the right to appeal.

## III.
## STANDARD OF REVIEW AND EXHAUSTION OF STATE COURT REMEDIES

This case was filed subsequent to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), so the standards of review set forth in the AEDPA apply to this case. *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997); *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Consequently, petitioner may not obtain relief in this Court with respect to any claim adjudicated on the merits in the state court unless the adjudication of the claim:

>   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, all factual determinations made by a state court shall be presumed to be correct and such presumption can only be rebutted by clear and convincing evidence presented by petitioner. 28 U.S.C. § 2254(e).

Subsection b of the same section states, as relevant to this proceeding:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>   (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i)   there is an absence of available State corrective process; or
>
>   (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

The exhaustion doctrine set forth in section 2254 requires the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. *Castille v. Peoples*, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059, 103 L. Ed. 2d 380 (1989). The doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S. Ct. 1198, 1203, 71 L. Ed. 2d 379 (1982).

To have exhausted his state remedies, a habeas petitioner must have fairly presented to the highest state court the substance of each of his federal constitutional claims. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S. Ct. 1845, 140 L. Ed. 2d 1094

(1998). This requires that any federal constitutional claim presented to the highest state court be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971).

In the State of Texas, the Court of Criminal Appeals is the highest court which has jurisdiction to review a petitioner's confinement. TEX. CODE CRIM. PROC. ANN. art. 44.45 (Vernon 1999). Claims may be presented to that court through an application for a writ of habeas corpus or on direct appeal by a petition for discretionary review. *See* TEX. CODE CRIM. PROC. ANN. art. 11.01 et seq. While a petitioner need not file both a state application for habeas corpus relief and a petition for discretionary review to exhaust his claims for federal habeas review, claims raised *for the first time* in a petition for discretionary review are not exhausted for federal habeas corpus purposes if the petitioner did not file a state petition for habeas corpus relief. *Castille*, 489 U.S. at 351; *Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990).

IV.
THE MERITS OF PETITIONER'S CONTENTIONS

*A. Legality of the Search Warrant*

By his first point, petitioner contends his conviction was obtained pursuant to an unconstitutional search and seizure. The record of this case reveals petitioner was arrested after police searched his residence, pursuant to a search warrant, and discovered methamphetamine and materials used in the production of methamphetamine. The search warrant was issued based on an affidavit by a police officer who stated in the affidavit that petitioner was a known methamphetamine user, a police officer smelled anhydrous ammonia and/or ether emanating from petitioner's residence a week prior to the date of the affidavit, and police officers noticed a known methamphetamine user by the name of Michael Knutson leaving petitioner's residence. (Reporter's

Record (hereinafter "RR") vol. 5, pg. 14). At the hearing on petitioner's motion to suppress, one of the police officers who followed Knutson testified that Knutson began driving erratically. (RR vol. 2, pg. 44). At one point, the officers lost sight of Knutson, but one of the units caught up to him and activated his emergency lights. (*Id.* at 45). When Knutson exited the vehicle, he threw down a soda pop bottle in anger, so the officer arrested Knutson for littering. (*Id.*).

At the police station, Knutson acted violently towards the arresting officer, which was strange to the officer because he personally knew Knutson, and Knutson had never acted in such a fashion toward the officer before. (*Id.*). The officer, therefore, asked a fellow officer to accompany him, and they went back to the area where police had lost sight of Knutson to look around. (*Id.* at 45, 51). The officers discovered two bags of methamphetamine, so fresh that it was still moist. (*Id.* at 45, 52).

The officers took the bags to Knuston and, after reading Knuston his *Miranda* rights, asked if they were his. (*Id.* at 45, 52). Knutson admitted they were, indeed, his and that he had thrown them out because he did not want the young lady in the vehicle with him to be discovered in the same vehicle with illegal drugs. (*Id.* at 46). Knutson, who had been a reliable informant for the Sheriff's Office on two prior occasions, stated he had gotten the methamphetamine from petitioner's residence right before the police started following him that evening. (*Id.* at 46, 54). Police relied, in part, on Knutson's statements when obtaining a search warrant for petitioner's residence. During the search of petitioner's residence, police discovered methamphetamine and several products used in the manufacture of methamphetamine.

Petitioner moved to suppress the evidence found during the search, contending the affidavit supporting the search warrant did not, on its face, reveal Knutson was a reliable informant. At the

pre-trial hearing on petitioner's motion to suppress, petitioner argued,

> Nothing from the affidavit gives any reason to believe that this officer had ever relied on information provided by Michael Crain Knutson before or that such information would, in fact, be reliable or trustworthy. For that reason, the Defense argues the affidavit upon which the search warrant is based is insufficient.

(RR vol. 2, pg. 39). Petitioner did not contest the validity of the search warrant on any other grounds. After listening to the testimony of the two officers, the trial court denied petitioner's motion to suppress, finding probable cause for the issuance of the warrant and reliability of the source upon which the affidavit was based. (*Id.* at pg. 59).

On direct appeal, petitioner argued the trial court erred by denying his motion to suppress because the affidavit in support of the warrant (i) contained material misrepresentations and (ii) did not establish, on its face, the reliability of Knutson as an informant. *See Marsh*, 2007 WL 1135381, at *2. The appellate court overruled petitioner's first ground because he failed to preserve it at trial and overruled petitioner's second ground because there were several independent factors indicating Knutson's trustworthiness. *Id.* at *1-*2.

In his petition for discretionary review, petitioner contended the appellate court erred because the argument that the warrant contained material misrepresentations was apparent from the context of his arguments, and therefore he had preserved such contention for appeal. He additionally re-urged his argument that the face of the affidavit failed to establish Knutson's reliability. His petition for discretionary review was refused.

In the instant habeas corpus application, petitioner no longer appears to assert the argument that the face of the affidavit failed to establish Knutson's reliability. He instead states,

> Petitioner filed a Motion to Suppress, alleging that [the affidavit supporting the request for the search warrant] was illegally executed, which was improperly denied by the trial court after the officer executing the affidavit, and another officer, testified

> at a hearing on said Motion to Suppress that the affidavit was facially incorrect, that numerous facts in the affidavit concerning information coerced from a confidential informant were materially misrepresented, undermining the credibility of said affidavit and the resulting warrant, and rendering illegal the resulting search, and evidence seized thereby.

(Petition for a Writ of Habeas Corpus by a Person in State Court, pg. 5).

As enumerated above, the state appellate court refused to hear this argument because petitioner had failed to present it to the trial court. Because the state court declined to address this claim on a procedural ground, this Court will not now consider such an argument. *See Coleman v. Thompson*, 501 U.S. 722, 729-31, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (stating a petitioner's failure to meet a state procedural requirement, and a state's subsequent refusal to address the petitioner's argument because of the procedural default, bars federal habeas review of the argument); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (stating "it is well settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default"). "[T]he Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims." *Fisher*, 169 F.3d at 300. Petitioner makes no argument against the rule's applicability to his case. *See Engle v. Isaac*, 456 U.S. 107, 129, 102 S. Ct. 1558, 1572-73, 71 L. Ed. 2d 783 (1982) (stating "any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief").

Even if this claim were not procedurally barred, petitioner would not be entitled to relief. It is well established that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal

habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 480, 96 S. Ct. 3037, 3046, 49 L. Ed. 2d 1067 (1976). When determining what constitutes an "opportunity for full and fair litigation," the law in this circuit is "[i]f a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs these processes." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002). The record in this case establishes petitioner was provided a full and fair opportunity to challenge the search warrant, and that he actually exercised that opportunity by challenging the warrant at trial, on appeal, and by filing a petition for discretionary review. Accordingly, this Court is procedurally barred from reviewing petitioner's first contention.

### B. Jury Instruction

In his second ground of error, petitioner contends his constitutional rights were violated because of a jury instruction he contends allowed him to be convicted by a burden of less than "beyond all reasonable doubt." (Petition for a Writ of Habeas Corpus by a Person in State Court, pg. 5). Specifically, petitioner appears to challenge the following language from the jury charge:

A substance is presumed to be anhydrous ammonia if the substance is in a container or receptacle that is:
    (1)    designed and manufactured to lawfully hold or transport anhydrous ammonia, or

    (2)    not designed and manufactured to lawfully hold or transport anhydrous ammonia, if:

        (A)    a properly administered field test of the substance using a testing device or instrument designed and manufactured for that purpose produces a positive result for anhydrous ammonia; or

        (B)    a laboratory test of a water solution of the substance produces

a positive result for ammonia.

(Clerk's Record, trial court cause number 6920, pg. 123-24). Immediately after this language, the charge contains the following statement:

> You are instructed with regards to the presumption set forth immediately above that:
> (1)   the facts giving rise to the presumption must be proven beyond a reasonable doubt;
>
> (2)   that even if such facts are proven beyond a reasonable doubt, you may find that the element sought to be presumed exists, but you are not bound to so find;
>
> (3)   that even though you may find the existence of such element, the State must prove beyond a reasonable doubt each of the other elements of the offense charged; and
>
> (4)   if you have a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and you shall not consider the presumption for any purpose.

(*Id.*).

Petitioner appears to focus his argument on the hypothetical possibility that, under the statutory guidelines as set forth in the jury instructions, a non-anhydrous ammonia solution ("merely an ammonia solution") could test positive for anhydrous ammonia and implicate an innocent person in a criminal activity. Petitioner's argument fails to allege a federal constitutional violation cognizable on federal habeas review. For the sake of argument, however, this Court will characterize petitioner's argument as challenging the jury instruction for violating the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt, i.e., as a *Sandstrom* argument.[1]  *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.

---

[1] Petitioner failed to lodge *any* objection to this portion of the jury charge at trial. However, the appellate court addressed the merits of petitioner's argument without any mention of the procedural default. Because the one state court that rendered an opinion on this argument failed to indicate petitioner was procedurally barred from making it, this Court will address the merits of the claim. *See Washington v. Watkins*, 655 F.2d 1346, 1368 (5th Cir.

Ct. 2450, 61 L. Ed. 2d 39 (1979).

Caselaw establishes a very high bar for a petitioner alleging constitutional error as to the jury charge. *See Young v. Alabama*, 443 F.2d 854, 855 (5th Cir. 1971) ("Unless there is a clear showing that the errors complained of were so gross or the trial was so fundamentally unfair, habeas corpus will not lie to set aside a conviction on the basis of improper [jury] instructions."); *McDonald v. Sheriff of Palm Beach County, Florida*, 422 F.3d 839, 840 (5th Cir. 1970) ("Alleged error pertaining to instructions to a jury does not constitute a basis for habeas corpus relief, unless the error is so gross as to result in violation of petitioner's constitutional rights."); *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969) ("A state prisoner's allegation that the jury instructions were improper is not entitled to habeas corpus relief unless the improprieties clearly show a denial of due process such as to deprive the petitioner of fundamental fairness").

The major constitutional concern with a potential jury charge error is whether it relieves the State of its burden of persuasion of beyond a reasonable doubt on every essential element of a crime. *Francis v. Franklin*, 471 U.S. 307, 313, 105 S. Ct. 1965, 1970, 1370, 85 L. Ed. 2d 344 (1985); *Coleman v. Butler*, 816F.2d 1046, 1048 (5th Cir. 1987). Determining whether a challenged jury charge violated constitutional rights begins by determining the nature of the presumption the contested charge describes—a mandatory presumption or a permissive inference. *Francis*, 471 U.S. at 314, 105 S. Ct. at 1971. "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Id.* A mandatory presumption violates the Due Process Clause if it

---

1981) (stating in a situation where none of the state courts addressed the fact that a claim was procedurally barred, "a federal court implies no disrespect for the State by entertaining the claim").

relieves the State of the burden of persuasion on an element of an offense. *Id.* "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.*

When evaluating a claim of jury charge error, a federal court must consider what the trial court actually told the jury and must determine how a reasonable juror would have interpreted the instruction. *Sandstrom*, 442 U.S. at 514, 99 S. Ct. at 2454. In order to properly do this, the federal court must consider the entire jury instruction. *Washington*, 655 F.2d at 1369. If, after completing this task, the court discovers a deficiency in the language of the charge, the petitioner must establish "the state court's error had substantial and injurious effect or influence in determining the jury's verdict." *Garcia v. Quarterman*, 454 F.3d 441, 446 (5th Cir. 2006) (internal quotations omitted).

The petitioner in the instant case attacks the jury charge language: "A substance is presumed to be anhydrous ammonia if the substance is in a container or receptacle that is . . . not designed and manufactured to lawfully hold or transport anhydrous ammonia, if . . . a laboratory test of a water solution of the substance produces a positive result for ammonia." (Clerk's Record, trial court cause number 6920, pg. 123-24). Although at first glance this language appears to be a command, i.e., the jury must presume the substance is anhydrous ammonia if certain requirements are met. When read in the context of the entire jury charge, however, such is not the case.

Unlike other cases where the Supreme Court determined the challenged jury instruction was mandatory, there is language immediately following the challenged portion of the jury charge in this case which nullifies any mandatory command of the challenged section. (*See id.* at 124). Unlike the charges other courts have found to be mandatory, the jury charge in this case told the jurors "you *may* find that the element sought to be presumed exists, *but you are not bound to so find*," even if

the facts establishing the presumption were proven beyond a reasonable doubt. (*Id.* (emphasis added)); *see Francis*, 471 U.S. at 316, 105 S. Ct. at 1972. This part of the jury charge told the jurors they had a choice about whether to apply the presumption—a reasonable juror would likely think he or she was not required to apply the presumption. *Francis*, 471 U.S. at 316, 105 S. Ct. at 1972. The charge further directed the jury that "the facts giving rise to the presumption must be proven beyond a reasonable doubt," thereby ensuring the jury acted as the ultimate factfinder and that the State was continually held to the standard of beyond a reasonable doubt. (Clerk's Record, trial court cause number 6920, pg. 124); *see Francis*, 471 U.S. at 316, 105 S. Ct. at 1972. Consequently, when read as a whole, the jury charge in this case did not relieve the State of the affirmative burden of persuasion on the element that the substance petitioner was found in possession of was anhydrous ammonia.[2] *See Francis*, 471 U.S. at 316, 105 S. Ct. at 1972.

    The portion of the jury charge challenged in this case is, thus, a permissive inference, not relieving the State of its burden of persuasion, but requiring the State to "convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *See Francis*, 471 U.S. at 314, 105 S. Ct. at 1971. The predicate facts were that officers smelled ammonia and/or ether upon entering petitioner's residence, discovered a propane bottle with blued fittings, indicating it was housing anhydrous ammonia, that a propane tank is not an appropriate container for anhydrous ammonia, that an officer trained in methamphetamine lab cleanup tested the gas by allowing gas from the tank to go into distilled water, and that the resulting solution tested positive for ammonia. (RR vol. 3, pgs. 126, 150, 230, 235, 253, 260; vol. 4, pg. 54). Morever, petitioner did not present

---

[2] The Court additionally notes petitioner never objected to the several instances during trial testimony in which various police officers stated that they discovered anhydrous ammonia upon searching petitioner's residence. (*See* RR vol. 3, pgs. 126, 150; RR vol. 4, pg. 54).

any support, i.e. any expert testimony or factual support, at trial or in any claim since that the substance seized from his residence was not anhydrous ammonia.

The conclusion suggested from the evidence was the gaseous substance, which was housed in a container not approved for anhydrous ammonia storage and which produced a positive result for ammonia upon a laboratory test of a water solution of the substance, was anhydrous ammonia. There is nothing to support a contention the substance was not anhydrous ammonia, and reason and common sense justify the conclusion that a gas mixed with water that tests positive for ammonia (and carries other indicators that it is ammonia, such as blued fittings of the storage container and the smell of ammonia) must have been a gaseous form of ammonia, i.e., anhydrous ammonia. The Court finds that in this case, the permissive inference in the jury instruction did not violate the Due Process Clause, nor was petitioner deprived of a fundamentally fair trial. *See Francis*, 471 U.S. at 314-15, 105 S. Ct. at 1971. Petitioner's second contention is without merit.

### C. Denial of the Right to Appeal

In his third ground of error, petitioner contends he was denied his right to appeal. Petitioner, of course, did directly appeal his conviction and this claim is, in actuality, a paraphrase of his first claim, i.e., that the state court of appeals erred in applying a procedural bar to his search warrant argument. At the state intermediate appellate court level, petitioner contended, as he has in the instant petition, the trial court should have granted his motion to suppress because facts stated in the affidavit were false, as established by the police officers' conflicting testimony at the pre-trial hearing.[3] The state appellate court refused to reach the merits of petitioner's argument, holding his

---

[3] At trial and in the instant petition, petitioner failed to specifically allege exactly what statements in the affidavit were false. The Court has compared the testimony of the officers at the pre-trial hearing and the affidavit at issue. It appears the only difference between the two is in regard to when Knutson threw the Pepsi bottle out of his vehicle—during the pursuit of the erratically driven vehicle, as stated in the affidavit, or when Knutson pulled over

failure to make such objection at trial waived the argument on appeal. Petitioner now contends the appellate court's holing violated his right to appeal.

As discussed in section III above, a claim is not exhausted for federal habeas corpus purposes unless it was fairly presented to the highest state court. *See Nobles*, 127 F.3d at 420. In his petition for discretionary review, petitioner only raised the arguments he raises in grounds one and two of the instant petition. He has never before presented to the state courts the argument that the state court of appeals violated his right to appeal. As such, he has failed to exhaust this argument for federal habeas corpus purposes. *See id.* This Court is barred from considering it. *See id.*

In the alternative, even if this Court were to review the merits of this contention, it would find the argument without merit, as petitioner clearly had and exercised his right to appeal by actually appealing to the intermediate state appellate court. An appellate court's refusal to reach the merits of a petitioner's argument because he failed to preserve the issue at trial does not amount to a denial of appeal. To the contrary, it is an unfavorable decision on an appellant's argument based on state procedural law, which a federal habeas corpus court will not question. *See Fisher*, 169 F.3d at 300. Accordingly, were this claim exhausted at the state court level, this Court would find such a claim to be without merit.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner a RICKY LYNN MARSH be DENIED.

---

at the end of the pursuit, as stated in the officer's testimony. (RR, vol. 2, pg. 45; RR, vol. 5, pgs. 14-15).

VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 12th day of February, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).